The habeas court disregarded Applicant's testimony about what happened, and the court stated in its findings of fact and conclusions of law:
This Trial Court hereby finds that on February 1, 2011, the Webb County Public Defender's Office was appointed to represent Applicant. During February 2011, the then Assistant Public Defender, Cristina Alva, was assigned to perform bond reduction hearings at the magistration level. Ms. Alva testified to her duties and the general procedures she followed in her role and her recollection of her representation of the Applicant. The Trial Court finds that Ms. Alva did speak to Applicant but any such communications were merely to gather personal information and ceased after Applicant informed her that he had a private attorney. The Trial Court finds that any communications between Ms. Alva and Applicant do not constitute attorney-client privilege and as such do not rise to the level of a due process violation.
Suppl. Habeas Corpus R. 95.
"[I]n most circumstances, we will defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record." Ex parte Reed , 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). However, "[w]hen our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions." Id. We will also, "understandably, become skeptical as to the reliability of the findings and conclusions as a whole. In such cases, we will proceed cautiously with a view toward exercising our own judgment." Id.
Because Alva herself had no recollection of her meeting with Applicant, the only direct evidence in the record about what actually occurred at the time was Applicant's own testimony. Of course, just because Applicant's testimony is the only direct evidence of what actually occurred does not mean that the factfinder (either the habeas court as the original factfinder or this Court as the ultimate factfinder)[1] is required to accept Applicant's version of events as true. Although it did not explicitly comment on Applicant's credibility, because the habeas court chose to believe an alternative, hypothetical scenario,[2] instead of Applicant's testimony, the habeas court implicitly found that Applicant was not credible.
Discounting Applicant's testimony, the record contains no direct or first-hand evidence *588 about the meeting between Alva and Applicant. Alva remembers nothing about any meeting with Applicant. She testified about two different patterns: (1) what she generally did with appointed clients, and (2) what she generally did with appointed clients that were already represented by counsel. However, she could not give any testimony about what she did with Applicant or her knowledge about whether Applicant was already represented by counsel. Regarding Applicant's case, all Alva could testify to was that her handwriting appears on a page on a mostly blank Client Interview Sheet used by the public defender's office. Yet, the habeas court chose the second pattern over the first when it found that what Alva typically did with clients who informed her that they were already represented by counsel was what actually occurred. In my opinion, the habeas court's decision to pick the second pattern over the first is not supported by the record.
Instead, the record supports a finding that Alva proceeded in accordance with her normal routine for her magistration cases. First, considering the undisputed parts of the record, the court appointed the public defender's office as counsel on February 1, 2011. Second, based on Alva's own testimony, she was assigned to do magistration level work for the public defender's office at that time. Third, based on the letter from the public defender's office, Alva was assigned to do that magistration level work for Applicant's case. Finally, the order appointing Fausto Sosa as counsel was dated April 6, 2011. If Sosa did not represent Applicant between February 1, 2011 and April 6, 2011, then it is a near certainty that Alva represented Applicant at some point during that two month period.
The evidence supporting a finding that Alva represented Applicant includes Applicant's testimony about what Alva actually did. While the habeas court implicitly found this testimony non-credible, it remains the only direct evidence of what occurred and is otherwise not controverted by any other direct evidence. Furthermore, the record is devoid of documents that would be expected if Alva declined to represent Applicant. It is undisputed that the public defender's office was appointed on February 1 as counsel for Applicant. Under article 26.04(j)(1) of the Code of Criminal Procedure, an appointed attorney shall "make every reasonable effort to contact the defendant not later than the end of the first working day after the date on which the attorney is appointed." Tex. Code Crim. Proc. Ann. art. 26.04(j)(1) (West 2009 & Supp. 2016).[3] Additionally, appointed counsel is required "to interview the defendant as soon as practicable after the attorney is appointed." Id. The law is clear that appointed counsel is required to represent the defendant until the charges against the defendant are dismissed, the defendant is acquitted, the appeals are exhausted, or counsel is given permission or is ordered to withdraw after a finding of good cause is entered on the record. Id. art. 26.04(j)(2). In this case, assuming the Webb County Public Defender's Office and Alva complied with their statutory duties, Alva would have contacted Applicant by the end of the first working day after the date of appointment, February 1, 2011. Because February 1, 2011 was a Tuesday, Alva would have contacted Applicant either that day or by the end of Wednesday, *589 February 2. Following that, Alva's duty was to interview Applicant as soon as practicable. Between February 1, 2011 and April 6, 2011, the charges against Applicant were not dismissed, and Applicant was not acquitted. Furthermore, there is no record evidence that Alva and the public defender's office were given permission to withdraw or ordered to withdraw, and there is no finding in the record of good cause for withdrawal. Assuming that Alva and the Webb County Public Defender's Office complied with their statutory duties, the lack of record evidence to the contrary suggests that she and the public defender's office remained as Applicant's counsel until Sosa was appointed on April 6, 2011. It should be noted that the habeas court's findings and conclusions do not mention when Alva's representation of Applicant was terminated.
As far as Sosa's representation of Applicant, his affidavit to the habeas court is primarily concerned with the ineffective assistance of appellate counsel claim. The affidavit sheds almost no light on the early stages of Applicant's case, including the question of when Sosa began representing Applicant, if such representation even began before Sosa was formally appointed as counsel. Sosa does state that "[t]here was no question and it was undisputed the Webb County Public Defender's Office had been appointed to represent Fernando Rodriguez, Jr., prior to my representation of said Defendant." Affidavit of Fausto Sosa, Suppl. Clerk's R. 81, 82 (emphasis added). This statement does support Applicant's position that he was represented first by the public defender's office and then by Sosa. Unfortunately, Sosa's statement does not clarify exactly when his representation began. While the statement does support the scenario where the public defender's office was appointed on February 1, Alva met with Applicant, and then Sosa began representing Applicant on April 6 when Sosa was appointed as counsel, the statement could also theoretically cover a scenario where the public defender's office was appointed on February 1, Sosa was retained as counsel immediately thereafter, and then Alva met with Applicant.
However, if Sosa had been retained as counsel before the court appointment, the record should contain filings made by Sosa on behalf of Applicant before he was actually appointed. There is no evidence of a bail hearing on Applicant's case where Sosa appeared as counsel. The record also does not contain any other documentary evidence between Applicant and Sosa clearly showing that Sosa represented Applicant during the time period between arrest and April 6, such as a notice of representation or docket sheet entries.[4] I *590 will also note that the habeas court's findings and conclusions did not mention anything as to whether Sosa represented Applicant prior to being appointed on April 6, 2011.
Finally, any evidence suggesting that Alva did not represent Applicant is virtually non-existent. Alva did testify about what she would generally do if an appointed client told her that the client was already represented by counsel, but Alva did not testify that this is what actually happened. The public defender's office Client Interview Sheet with Alva's handwritten note, mentioned above, stated that Applicant had a private attorney, Fausto Sosa. However, it is unknown when Alva made the note, and she was unable to testify about the circumstances surrounding her writing of the note. All she could testify to was that the note was written in her handwriting. Therefore, the only thing certain about the timing of the handwritten note is that it was made at some point in time before the hearing on Applicant's motion for new trial, where the mostly blank Client Interview Sheet was admitted as evidence.
Thus, on balance, the record does not support the finding of the habeas court. While a mostly-blank Client Interview Sheet could be consistent with a scenario in which Alva met with Applicant, Applicant told her that he was already represented by Sosa, Alva wrote a note that Applicant had Sosa as a private attorney, and Alva then ceased to do any work on Applicant's case. However, that finding is based on pure speculation that such events actually occurred and is contrary to other evidence.
Instead, the record tends to support Applicant's version of events that Alva and Applicant discussed release on bail and the facts of the case. The public defender's office was appointed as counsel, and Alva, working for that office, likely met with Applicant. Alva likely told Applicant that she would be working on bail in his case. Alva likely provided legal advice when she explained the bail laws and how a delay in bail release would trigger article 17.151. Consequently, it is likely that Alva formerly represented Applicant.[5] However, it must be noted that the habeas court implicitly found Applicant to be non-credible, and because Alva has no recollection of representing Applicant in this case, the record before us leaves many questions without definitive answers. Obviously, documentary evidence from Sosa explaining *591 exactly when his representation of Applicant began, such as a signed representation agreement or a copy of a filing with the magistrate court, would resolve the matter. It could also be resolved by an affirmative, sworn statement that clearly defines when Sosa's representation began, such as an affidavit or through live testimony. It is true that Sosa has already filed an affidavit in this matter, and the affidavit does state that "[t]here was no question and it was undisputed the Webb County Public Defender's Office had been appointed to represent Fernando Rodriguez, Jr., prior to my representation of said Defendant." Affidavit of Fausto Sosa, Suppl. Clerk's R. 81, 82. While the habeas court does not explicitly include that Sosa's affidavit is not credible, the findings and conclusions are not consistent with Sosa's affidavit. This question is the very heart of the matter before us, and, accordingly, we should remand this cause to the habeas court to determine the truth of the matter.
IV-Conclusion
In conclusion, I find that the record is deficient. The most important question, whether Sosa was already representing Applicant at the time the public defender's office was appointed as counsel, remains answered. On one hand, there are indications in the record that could imply that no attorney-client relationship was formed between Alva and Applicant. On the other hand, with evidence such as Applicant's testimony, the lack of evidence showing Alva and the public defender's office were relieved of their duty as counsel, and Sosa's affidavit, the record actually tends to support Applicant's version of events. Thus, it is not certain whether Cristina Alva represented Applicant during the bail phase of the case before she switched sides and was part of the prosecution team during the trial phase of the case. If counsel indeed switched sides, then Applicant's right to due process was violated. Based on the record, as it currently stands, I believe the most appropriate course of action is to remand this matter for further fact-finding. I would remand to the habeas court to: (1) obtain an affidavit from Sosa explaining (A) whether he represented Applicant before being appointed as counsel on April 6, 2011 and, (B) if so, the date his representation commenced, and (C) what knowledge he has regarding who represented Applicant before he was appointed as counsel on April 6, 2011; (2) obtain jail visitation records between the date Applicant was arrested and the date Sosa was appointed on April 6, 2011; and (3) the records of the magistrate court relating to this case. Because the Court chooses to deny relief, I dissent.

In habeas corpus proceedings, the habeas court is the "original factfinder," and this Court is the "ultimate factfinder." Reed , 271 S.W.3d at 727 ; Ex parte Van Alstyne , 239 S.W.3d 815, 817 (Tex. Crim. App. 2007).

A scenario in which Alva met with Applicant, Applicant told Alva that he was already represented by Fausto Sosa, and the meeting between the two played out accordingly.

In 2001, the Legislature passed S.B. 7, also known as the Texas Fair Defense Act, specifically relating to the period during which a person arrested is required to be taken before a magistrate or released on bond and to the appointment and compensation of counsel to represent indigent persons accused of crime. Act of May 17, 2001, 77th Leg., R.S., ch. 906, 2001 Tex. Gen. Laws 1800.

In fact, the docket provided by the district court in the habeas record contains no entries before May 31, 2011, when the criminal case and indictment were filed against Applicant and his co-defendants. See Case Summary, Suppl. Clerk's R. 1. The docket included with the record for Applicant's petition for discretionary review similarly contains no entries before May 31, 2011. See Webb County Judicial System Docket, Rodriguez v. State , No. PD-1357-14, Clerk's R. 1, 5, 7. The clerk's record filed with Applicant's petition for discretionary review did include some pre-indictment material, but these documents still leave unexplained who represented Applicant at the critical time. They include sheriff's department booking records showing bonds were set on January 31, id. at 53-54, the Order appointing the public defender's office as counsel on February 1, id. at 55, a Check List for Pre-Indictment Packages dated February 8, id. at 56, two Magistrate's Warnings dated February 1 for Applicant's charges, id. at 57-58, what appears to be an undated worksheet to determine whether Applicant was indigent to qualify for appointed counsel, id. at 59, and then a Notice of Setting dated June 2 and filed June 3 for a June 15 consultation. Id. at 60. Interestingly, the Magistrate's Warning shows that Applicant requested a court-appointed attorney. Id. at 57. If Applicant was already represented by Sosa, it would be strange for Applicant to request an appointed attorney and for the court to proceed to appoint him an attorney, which turned out to be the public defender's office.

To entertain the alternative scenario, that Alva did indeed cease communicating with Applicant, we would also have to entertain the idea that Alva walked away from her court-appointed client without being relieved of her duties to her client. In addition to being contrary to the statutory framework for withdrawal as appointed counsel, such behavior is also contrary to the disciplinary rules. As discussed above, there is no record evidence that Sosa actually represented Applicant before Sosa was actually appointed as counsel. If Alva simply walked away from Applicant and ceased communicating with him, then Applicant's interests were neglected and the representation was not properly terminated. See Tex. Disciplinary Rules Prof'l Conduct R. 1.01, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013 & Supp. 2016) ("(b) In representing a client, a lawyer shall not: (1) neglect a legal matter entrusted to the lawyer ... (c) As used in this Rule, 'neglect' signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients."), 1.15(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests ....").